IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| MICHAEL BEASLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> JOHN WILEY & SONS, INC., ) <br> ) <br> Defendant. ) | Case No. 12-cv-08715 <br> Hon. John F. Grady <br><br> **PLAINTIFF MICHAEL BEASLEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Plaintiff Michael Beasley ("Beasley") moves for partial summary judgment of liability for copyright infringement against Defendant John Wiley & Sons, Inc. ("Wiley"). Beasley requests a judgment of liability against Wiley for 83 claims of copyright infringement alleged in his Complaint[1] and identified in Exhibit 1 to the Declaration of Alex Kerr filed with this motion.[2] In connection with this motion, Plaintiff submits a Separate Statement of Undisputed Material Facts and supporting documents.

I. **PRELIMINARY STATEMENT**

This is a copyright infringement case brought by Michael Beasley, a professional photographer, against Wiley, a textbook publisher and recently adjudicated copyright infringer.[3] For over twenty years, John Wiley & Sons, Inc. ("Wiley") has been covertly committing

---

[1] Doc. No. 1.

[2] *See* Exhibit 1, Declaration of Alex Kerr ("Kerr Declaration").

[3] Wiley's infringement is widespread; it has been held liable for more than 100 claims of copyright infringement by a district court in Arizona,[3] a jury in New York,[3] and an arbitrator in Arizona. *See Tom Bean v. John Wiley & Sons, Inc.*, No. CV 11–08028–PCT–FJM, 2012 WL 1078662 (D. Ariz. March 30, 2012); *Psihoyos v. John Wiley & Sons, Inc.*, No. 11-cv-1416 (S.D.N.Y.) (2012 WL 5506121 (S.D.N.Y. Nov. 7, 2012) (denying motion for remittitur or new trial)); *In re: DRK Photo and John Wiley & Sons, Inc.* AAA# No. 76 143 00193 11 S1M. Wiley also has been charged in at least 15 other cases with similar allegations across the United States. *See* Kerr Declaration, ¶ 7.

copyright infringement on a massive scale; Beasley is just one of Wiley's numerous victims. Here is how Wiley's scheme worked: To gain access to high-resolution, publication-quality images, Wiley contacted individual photographers and stock photo agencies, requesting limited licenses to copy and distribute images Wiley selected for use in its products. Wiley initiated the licensing process by sending request letters to the copyright holders or their agents describing the specific rights Wiley supposedly needed. Wiley did not request *un*limited-use licenses because, in the stock photography business, such licenses commanded much higher fees. The image suppliers priced the licenses according to the rights being granted, and Wiley paid the license fees. Wiley then disregarded the license terms by printing unlicensed copies of the photographs, distributing them in unlicensed geographic areas, creating unlicensed electronic copies, and printing copies of photographs in publications without any permission, notice, or payment to the copyright holders.

Beasley had no way of knowing the extent of Wiley's actual use of his photographs. He trusted that Wiley, itself a copyright owner and fierce protector of its own intellectual property, would use his artwork within the limits of the licenses it purchased. It did not. Instead, Wiley systematically infringed Beasley's and others' works.

Based on discovery in this case, it is undisputed that Wiley used Beasley's photographs in ways that were not permitted by the limited license Wiley obtained. Beasley requests summary judgment as to Wiley's liability for copyright infringement for the claims alleged in Beasley's Complaint and identified in Exhibit 1 to the Kerr Declaration. Wiley's own documents and deposition testimony leave no doubt that Wiley: (1) printed more copies of Beasley's photographs than it was permitted to print under the limited license it was granted and (2) created and distributed electronic copies of Beasley's photographs without any license to do so.

## II. UNDISPUTED MATERIAL FACTS

1. Beasley is the creator and legal copyright owner of certain photographs identified in Exhibit 1 to the Declaration of Alex Kerr filed with this motion ("Photographs").[4]

2. Each of the Photographs is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights.[5]

3. Odyssey Productions, Inc. ("Odyssey"), a stock photography licensing agency, acted as licensing agent for Beasley for the Photographs.[6]

4. Wiley requested to permission to use copies of the Photographs in its publication *Frommer's Chicago, Day by Day*.[7]

5. In response to the requests, on or around December 19, 2005, Beasley issued a limited license to Wiley, granting permission to use the Photographs.[8] The license was limited in scope and contained firm and clear restrictions on the authorized use of the Photographs.[9]

6. The license granted Wiley permission to use copies of the Photographs in the publication, *Frommer's Chicago, Day by Day*. The license contained the following limitations: (1) a maximum print run of 46,000 copies; (2) a format of reproduction in print only, meaning the images could not be reproduced on electronic media (i.e. eBooks); (3) use in the first edition of *Frommer's Chicago, Day by Day* and not in subsequent editions or adaptations.[10]

7. Wiley reproduced the Photographs in the publications identified in Exhibit 1 to the

---

[4] Separate Statement of Facts, ¶ 6; Beasley Declaration, ¶ 2.
[5] Separate Statement of Facts, ¶ 7; Beasley Declaration, ¶ 3; Exhibit B to the Beasley Declaration.
[6] Separate Statement of Facts, ¶ 8; Beasley Declaration, ¶ 4.
[7] Separate Statement of Facts, ¶ 9; Beasley Declaration, ¶ 5.
[8] Separate Statement of Facts, ¶ 10; Beasley Declaration, ¶ 6; Exhibit A to the Beasley Declaration.
[9] *Id*.
[10] Separate Statement of Facts, ¶ 11; Beasley Declaration, ¶ 8; Exhibit A to the Beasley Declaration; Exhibit 1 to the Kerr Declaration.

Kerr Declaration.[11]

8. Wiley was not authorized to use the Photographs beyond the uses expressly granted by the license.[12]

9. Despite the limits set forth in the license it obtained, Wiley reproduced more print copies [REDACTED] of the Photographs than permitted by the license (46,000), reproduced the Photographs in electronic formats without permission, and produced unlicensed second editions of both the print and electronic versions of *Frommer's Chicago, Day by Day*.[13]

## III. LEGAL STANDARD

Summary judgment or partial summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "In evaluating a motion for summary judgment, courts must view the evidence in the light most favorable to the non-moving party.[15] "[B]efore a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute. 'Genuine,' in this context, means 'reasonably contestable.' Put otherwise, a factual dispute is 'genuine' only if a reasonable jury could find for either party."[16] In September 2012, this Court explained the standard:

> Summary judgment is proper against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' [Citing *Celotex Corp. v.*

---

[11] Separate Statement of Facts, ¶ 12; Kerr Declaration, ¶ 6.
[12] Separate Statement of Facts, ¶ 13; Beasley Declaration, ¶¶ 9-14.
[13] Separate Statement of Facts, ¶ 14; Kerr Declaration, ¶¶ 2-6; Exhibits 1-4 to the Kerr Declaration, which include information from Wiley's databases reflecting Wiley's print amounts and distributions of publications at issue.
[14] Fed. R. Civ. P. 56(a).
[15] *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
[16] *SMS Demag Aktiengesellschaft v. Material Sciences Corp.,* 565 F.3d 365, 368 (7th Cir. 2009) (internal citations omitted).

*Catrett*, 477 U.S. 317, 322 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).] The party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). 'The mere existence of a scintilla of evidence in support of the opposing position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party].' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[17]

In the context of copyright law, "[t]he test for summary judgment in a copyright case must comport with the standard applied to all civil actions."[18]

## IV. ARGUMENT

A plaintiff bringing a claim for copyright infringement must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.[19] Where, as here, the works in question were licensed to the defendant, the plaintiff must show that the defendant used the works in a manner that exceeded the scope of the licenses.[20] "[I]f the licensee acts outside the scope of the license, the licensor may sue for copyright infringement."[21] Because no genuine issue of material fact exists regarding the validity of Beasley's copyrights or Wiley's

---

[17] *B.S.N. Grp., Inc. v. Bagchi*, 09-CV-589, 2012 WL 4482015, at *2 (N.D. Ill. Sept. 26, 2012).
[18] *Shaw v. Lindheim*, 919 F.2d 1353, 1358-1359 (9th Cir. 1990); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 fn. 3 (9th Cir. 1994) ("we reject [the] contention that *Shaw* either prohibits summary judgment in copyright cases or creates a heightened standard").
[19] *Feist Publications, Inc., v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006); *see also* 17 U.S.C. § 106(1) (copyright owner has the exclusive right to copy and to authorize copying of the work); 17 U.S.C. § 501(a) ("anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . .").
[20] *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("The licensee violates the copyright by exceeding the scope of this license."); *Estate of Brown v. Arc Music Grp.,* 2013 WL 1277064, at *3 (7th Cir. Mar. 29, 2013); *see also S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-1088 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license. The critical question is not the existence but the scope of the license.") (Citation omitted).
[21] *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) *see also LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006) ("when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement") (internal quotation marks omitted).

5

use of the Photographs beyond the terms of the limited licenses, Wiley should be found liable for copyright infringement.

>   A.  **Beasley owns valid copyrights to the Photographs.**

Beasley's Declaration and certificate of copyright registration demonstrate his ownership of valid, registered copyrights in the Photographs.[22] Because there is no disputed issue of material fact regarding Beasley's ownership of the copyrights or their validity, Beasley satisfies the first element of the two-part infringement test.

>   B.  **The license issued to Wiley was limited in scope with respect to print quantities and media.**

The license issued to Wiley was limited in scope. "[A] copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."[23] Wiley's use beyond those limits constitutes copyright infringement.

Construction of license terms must be done with the purposes of federal copyright law in mind.[24] "Chief among these purposes is the protection of the author's rights."[25] The Court may rely on state law "to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy."[26] Pursuant to federal copyright policy, "copyright licenses are assumed to prohibit any use not authorized."[27]

The terms of the license Wiley obtained from Beasley are stated in Invoice No. 765174,

---

[22] Beasley Declaration, ¶¶ 2-3; Exhibit B to the Beasley Declaration.
[23] *Marshal v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991); *see also* David Nimmer, 3 Nimmer on Copyright, § 1015[A] (2012).
[24] *S.O.S., Inc.,* 886 F.2d at 1088 (citing *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 854 (9th Cir. 1988)).
[25] *Id.*
[26] *Id.* (citing *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 482-83 (5th Cir. 1981)).
[27] *Id.* at 1088.

dated December 19, 2005.[28] Under the section titled "Usage Rights Granted," the license states, "One time nonexclusive print rights, John Wiley & Sons[,] Inc[.], Frommer's "Chicago Day by Day" 1st Edition, English language only, up to 46,000 total press run, published May 2006, World rights (defined as USA plus 10% English language countries), six years. No electronic rights."[29] Wiley understood the terms on Beasley's written invoices limited the authorized uses Wiley could make of Beasley's photographs.[30] Wiley's payment of the license fees set forth in the invoice and its subsequent use of the Photographs demonstrate Wiley's acceptance of the license terms.

      **C.**    **Wiley used the Photographs beyond the terms of the license it obtained or without any license.**

"[I]n most [copyright infringement] cases, direct evidence of copying is not available . . ."[31] Here, however, there is no confusion about which images Beasley licensed and Wiley used. Wiley's own documents establish that it printed more copies than were authorized in all instances. Wiley printed [REDACTED] total copies of *Frommer's Chicago, Day by Day*, First Edition, and [REDACTED] copies of *Frommer's Chicago, Day by Day*, Second Edition, for a combined total of [REDACTED] copies across both editions.[33] Wiley also produced electronic copies of *Frommer's Chicago, Day by Day,* First Edition and *Frommer's Chicago, Day by Day,* Second Edition.[34] Further, the license granted to Wiley and the terms of which Wiley acknowledged and accepted when it paid the amount requested clearly indicate that only one edition was authorized. By producing a second edition, Wiley exceeded the original license

---

[28] Separate Statement of Facts, ¶ 11; Beasley Declaration, ¶ 8; Exhibit A to the Beasley Declaration; Exhibit 1 to the Kerr Declaration.
[29] *Id*.
[30] Excerpted Fed. R. Civ. P. 30(b)(6) deposition of Robert Garber, at 95:2-7; Exhibit 5 to the Kerr Declaration.
[31] *Shaw*, 919 F.2d at 1356.
[33] Separate Statement of Facts, ¶ 14; Kerr Declaration, ¶¶ 2-6; Exhibits 1-4 to the Kerr Declaration.
[34] *Id*.

limits. Wiley also exceeded the permitted number of reproductions by printing over 46,000 total copies. Finally, Wiley's use of Beasley's photographs electronically was without permission or license.

Wiley admitted to its use in excess of license limits in its deposition pursuant to Rule 30(b)(6):

> Q. …Wiley as an entity, which is responsible for the actions of its employees, requested a license for 46,000 units, was given an invoice for 46,000 units, paid the invoice for 46,000 units, and began printing books. Did anything in there or anywhere else suggest to Wiley that it had the right to print more than 46,000 books?
> A. No.[35]

Wiley also admitted that it made electronic reproductions of the books and Photographs at issue even though the license did not grant electronic rights:

> Q. So Wiley did produce and sell electronic versions of *Frommer's Chicago Day By Day*, correct?
> A. Yes.
>
> Q. Yet it did not have a license to do so, correct?
> A. The invoice says "no electronic rights".
>
> Q. And did Wiley ever contact Odyssey to seek electronic rights?
> A. Not to my knowledge.[36]
>
> Q …Is there any document that we reviewed or that you've seen or any conversation that you had that would lead you to believe that Wiley was requesting electronic usage?
> A. No.
>
> Q. So where is the discrepancy?
> A. The fact that we created e-books.
>
> Q. That's not a discrepancy between the request and the invoice; rather,

---

[35] Exhibit B to the Kerr Declaration, excerpted Fed. R. Civ. P. 30(b)(6) deposition of Robert Garber, at 107:21 – 108:3.
[36] *Id*. at 92:5-14.

8

> > a discrepancy between both of those and what Wiley eventually did?
>
> A. Yes.[37]

Wiley's use of Beasley's images beyond license terms is not unique to Beasley – it is how Wiley does business. In March of 2012, Wiley was adjudicated a copyright infringer in a District of Arizona case with facts indistinguishable from those here. In *Bean v. John Wiley & Sons, Inc.*, Tom Bean, a professional photographer, moved for partial summary judgment against Wiley for copyright infringement arising out of use of his photographs beyond license limits.[38] In granting Bean's motion, Judge Martone rejected Wiley's statute of limitations defense, holding:

> It is undisputed that defendant infringed plaintiff's copyrights on each occasion as listed in Exhibits A and B to plaintiff's motion for partial summary judgment. Defendant has not raised a genuine issue of material fact as to whether these claims are time barred. Accordingly, plaintiff is entitled to summary judgment on the issue of liability for each of the 108 instances of copyright infringement listed in Exhibits A and B.[39]

Last summer, in *Psihoyos v. John Wiley & Sons, Inc.*,[40] after a six-day trial, a jury in New York returned a verdict of $100,000 in statutory damages against Wiley for infringing one photograph by Louis Psihoyos which Wiley licensed for $216. Wiley requested, and the license allowed, 100,000 copies to be printed; before asking for the right to print 100,000 copies, Wiley projected it would sell 127,000 copies, and Wiley ultimately printed 165,000 copies.[41]

Judge Oetken recently affirmed the *Psihoyos* jury's verdict in denying Wiley's motion for remittitur, stating:

> In short, this Court rejects Defendant's contention that the evidence presented at trial establishes nothing 'more than mere negligence or mistake' as a matter of

---

[37] *Id*. at 97:3-7.
[38] No. 11-cv-08028-PCT-FJM, 2012 WL 1078662 (March 30, 2012).
[39] *Id.* at *3.
[40] No. 11-cv-1416 (S.D.N.Y.).
[41] *Id*.

9

law. (*See* Dkt. No. 99 ("Def.'s Mem.") at 7 (quoting *Tiffany (NJ), Inc.* v. *eBay, Inc.* 576 F. Supp. 2d 463, 515(S.D.N.Y. 2008)), or '[b]ureaucratic ineptitude.' (*Id.* at 7 (quoting *Martin v. City of Indianapolis*, 192 F.3d 608, 614 (7th Cir. 1999).) Rather, the jury's determination that Defendant acted willfully is supported by the evidence.[42]

*Wood v. Houghton Mifflin Harcourt Publishing Co.*[43] is also an analogous copyright infringement case brought by a photographer against a different textbook publisher. In *Wood* the District of Colorado granted partial summary judgment in favor of the photographer. Circuit Judge Ebel[44] concluded that the plain meaning of a license specifying print quantities no greater than 40,000 copies prevails over a publisher's purported understanding of "industry standards." There, Houghton Mifflin Harcourt ("HMH") contended that a copyright license that specifies a print run of 40,000 copies "does not limit publishers, which could reproduce over a million copies of the copyrighted work without seeking further permission from, or paying additional fees to, the copyright holder."[45] In rejecting HMH's argument, the court explained:

> HMH may not defeat summary judgment with such facially implausible and self-serving claims. In short, without substantially more evidence than that of [HMH's witness's] testimony, this Court finds that no reasonable jury could, or would, find that a license limited by clear language to a run of 'under 40,000' included permission to reproduce more than 40,000 copies – indeed, to reproduce any number of copies that the publisher or printer desired.[46]

In sum, District courts in Arizona, New York, and Colorado, as well as a private arbitrator, looking at facts very similar to those here, have ruled that textbook publishers – including Wiley – infringed copyrights by exceeding license limits in the manner Wiley has here. The facts and law are clear regarding the second prong of the two-part copyright infringement test

---

[42] 2012 WL 5506121, at *2 (S.D.N.Y. Nov. 7, 2012).
[43] 589 F.Supp.2d 1230 (D. Colo. 2008).
[44] Sitting by designation in the district court.
[45] *Id.* at 1241.
[46] *Id.* at 1242.

and warrant summary judgment on Wiley's unauthorized uses of Beasley's photographs identified in Exhibit 1 to the Kerr Declaration.

> D. **Wiley lacks sufficient evidence to carry its burden of proof at trial in connection with several of its affirmative defenses.**

Summary judgment is appropriate if a party cannot produce admissible evidence to support an affirmative defense.[52] The Supreme Court explained in *Celotex Corp. v. Catrett*:[53]

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Where the nonmoving party will bear the burden of proof at trial on an issue, "the requirements that Rule 56 imposes on the moving party are not onerous":[54]

> It does not require the moving party to support its motion with affidavits or other similar materials *negating* the opponent's claim. Rather, the movant's initial burden may be discharged by showing – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case. Upon such a showing, the nonmovant must then make a showing sufficient to establish the existence of an element essential to that party's case. The nonmovant . . . must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor.[55]

> 1. **Wiley has no evidence supporting its estoppel affirmative defense.**

Wiley's First Affirmative Defense alleges that Beasley's claims are barred by estoppel.[56] "To establish estoppel in a copyright action, the party to be estopped must be shown to have

---

[52] FRCP 56(a) and 56(c)(1)B).
[53] 477 U.S. 317, 322-323 (1986).
[54] *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).
[55] *Id.* at 1168-1169 (citations and internal quotation marks omitted).
[56] Answer, Doc. 10, at 4-5.

11

knowledge of the defendant's infringing conduct and to have intended or actually induced such reliance. In addition, the defendant must be ignorant of the facts, relying on plaintiff's conduct to his detriment."[57] A party advancing an equitable estoppel defense bears the burden of proof.[58] Wiley has produced no evidence supporting this defense. Accordingly, Wiley cannot meet its burden of proof at trial, and Beasley is entitled to partial summary judgment on this defense.

### 2. Wiley has no evidence supporting its affirmative defense of laches.

Wiley's Second Affirmative Defense alleges that Beasley's claims are barred by the doctrine of laches.[59] "To support a finding of laches, the defendant has the burden of proving three elements: (1) the plaintiff delayed in filing suit against the defendant; (2) the delay was unreasonable; and (3) this delay was prejudicial to the defendant."[60] Wiley has produced no evidence that Beasley unreasonably delayed in filing suit or that Wiley was injured as a result of any such delay. Therefore, Beasley is entitled to summary judgment on this defense.

### 3. Wiley has no evidence supporting its Fifth Affirmative Defense, that Beasley's copyrights are invalid and/or unenforceable.

Wiley's Fifth Affirmative Defense states:

> On information and belief, to the extent any copyright registrations are asserted by Plaintiff as covering the photos in suit, Wiley alleges that such copyrights are invalid and/or unenforceable.[61]

Wiley has not produced any evidence supporting its assertion that Beasley's copyright registrations render the copyrights invalid or unenforceable. Wiley cannot meet its burden to establish this allegation, and Beasley is entitled to summary judgment on this defense.

---

[57] *Rand McNally & Co. v. Fleet Mgmt. Sys., Inc.*, 591 F.Supp. 726, 740 (N.D. Ill. 1983) (Getzendanner, J.).
[58] *Furkin v. Smikun*, 237 Fed.Appx. 86, 90 (7th Cir. 2007).
[59] Answer, Doc. 10, at 5.
[60] *Monotype Imaging, Inc. v. Bitstream, Inc.*, 2005 WL 936882, *9 (N.D. Ill. 2005) (St. Eve, J.).
[61] Answer, Doc. 10, at 5.

### 4. Wiley has no evidence supporting its statute of limitations defense.

Wiley's Sixth Affirmative Defense alleges that Beasley's claims are barred by the statute of limitations.[62] "It has long been the rule that defendants bear the burden of proof as to affirmative defenses, including the assertion that a statute of limitations is a bar to an action."[63] "[T]he copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights."[64] Wiley has no evidence that Beasley knew or should have known of Wiley's infringement more than three years before filing suit. Accordingly, Beasley is entitled to summary judgment on this defense.

### 5. Wiley has no evidence supporting its affirmative defense of license.

Wiley's Seventh Affirmative Defense alleges that Beasley's claims are barred by the defense of license.[65] The burden to prove the affirmative defense of license in a copyright infringement action is on the defendant.[66] Wiley has not produced any evidence supporting its assertion that it had licenses for all of its uses of Beasley's Photographs. Absent such evidence, Wiley cannot meet its burden to establish its license defense, and Beasley requests summary judgment on this defense.

### 6. Wiley has no evidence supporting its mitigation of damages defense.

Wiley's Eighth Affirmative Defense states that Beasley "has failed to take any steps to mitigate [his] damages."[67] "Because a plaintiff's failure to mitigate damages is an affirmative defense, the [defendant] bears the burden of proof on this issue."[68] Wiley has no evidence that

---

[62] *Id.*
[63] *U.S. v. Askegard*, 291 F.Supp.2d 971, 977 (D. Minn. 2003).
[64] *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004).
[65] Answer, Doc. 10, at 5.
[66] *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012).
[67] Answer, Doc. 10, at 5.
[68] *Donnelly v. Yellow Freight System, Inc.*, 874 F.2d 402, 411 (7th Cir. 1989).

Beasley failed to mitigate his damages. Beasley therefore requests that the Court enter summary judgment on this defense.

### 7. Wiley cannot show that it is entitled to a "revision privilege."

Wiley's Ninth Affirmative Defense alleges:

> To the extent that Plaintiff's claims relate to Wiley's inclusion of a photograph in a later edition or revised version of a work for which Wiley previously was licensed, such reuse is non-infringing pursuant to the revision privilege contained in Section 201(c) of the Copyright Act.[69]

However, 17 U.S.C. § 201(c) provides:

> **Contributions to Collective Works.** Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution. In the absence of an express transfer of the copyright or of any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series.

This provision is obviously inapplicable to this action. Beasley therefore requests summary judgment with respect to this defense.

### 8. Wiley's "innocent intent" affirmative defense is without merit.

Wiley alleges in its Tenth Affirmative Defense that any use of the works at issue in excess of the rights held by Wiley "was made with an innocent intent and without any belief that any acts of Wiley constituted an infringement of copyright."[70] "Direct infringement does not require any particular state of mind."[71] "Intent or knowledge is not an element of infringement, and thus even an innocent infringer is liable for infringement."[72] Thus, this "defense" is not a defense at all, and

---

[69] Answer, Doc. 10, at 6.
[70] Answer, Doc. 10, at 6.
[71] *Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equipment Distributors*, 983 F.Supp. 1167, 1172 (N.D. Ill. 1997) (Gettleman, J.).
[72] *Playboy Enterprises, Inc. v. Frena*, 839 F.Supp. 1552, 1559 (M.D. Fla. 1993).

14

Beasley requests summary judgment on this defense.

### 9. Wiley has no evidence that the copyright registrations are untimely.

Wiley's Eleventh Affirmative Defense alleges that Beasley's copyright registrations are untimely.[73] However, Wiley has produced no evidence supporting this contention, so Beasley is entitled to summary judgment on this defense.

### 10. Wiley has no support for its unclean hands affirmative defense.

Wiley has no evidence supporting its Sixteenth Affirmative Defense, unclean hands.[74] Beasley therefore requests summary judgment on this defense.

### 11. Wiley cannot prove its implied license affirmative defense.

Wiley's Nineteenth Affirmative Defense alleges that Beasley's claims under the Digital Millennium Copyright Act are barred "by the defense of license and/or consent arising from the course of dealing between the parties to the transactions at issue in this proceeding."[75] Wiley has produced no evidence supporting this contention, however. Beasley therefore requests summary judgment on this defense.

## V. CONCLUSION

Wiley's own documents and testimony show that, without permission, it (1) printed more copies of Beasley's photographs than it was permitted to print under the limited license it was granted and (2) created and distributed electronic copies of Beasley's photographs without any license to do so. Such uses constitute copyright infringement. Accordingly, Beasley respectfully requests the Court grant his motion for partial summary judgment.

Beasley requests oral argument on this motion.

---

[73] Answer, Doc. 10, at 6.
[74] *Id.* at 7.
[75] *Id.* at 8.

DATED: November 22, 2013

        Plaintiff Michael Beasley, by his attorneys,

        */s Maurice Harmon*
        Maurice Harmon
        Harmon & Seidman LLC
        11 Chestnut Street
        New Hope, PA 18938
        (215) 693-1953
        maurice@harmonseidman.com

        Alex Rice Kerr
        Harmon & Seidman LLC
        PO Box 3097
        Jackson, WY 83001
        (970) 270-4718
        alex@harmonseidman.com

        E. Bryan Dunigan (0691356)
        The Law Offices of E. Bryan Dunigan
        221 N. LaSalle St., Suite 1454
        Chicago, IL 60601
        (312) 857-2114
        bdunigan@duniganlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2013 I electronically filed the foregoing PLAINTIFF MICHAEL BEASLEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which notifies counsel of record.

        */s Alex Rice Kerr*
        Alex Rice Kerr