**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

MICHAEL BEASLEY,

        Plaintiff,

    v.

JOHN WILEY & SONS, INC.,

        Defendant.

CASE NO.  12-cv-08715

Hon. John F. Grady

Magistrate Judge Michael T. Mason

---

**JOHN WILEY & SONS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Christopher P. Beall
Michael Beylkin
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 1000
New York, NY  10036
cbeall@lskslaw.com
mbeylkin@lskslaw.com

William McGrath
Kevin A. Thompson
Davis McGrath LLC
125 South Wacker Drive
Chicago, Illinois 60606
wmcgrath@davismcgrath.com
kthompson@davismcgrath.com

*Attorneys for Defendant John Wiley & Sons, Inc.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF FACTUAL BACKGROUND ........................................................................... 2

ARGUMENT ............................................................................................................................... 3

    I.     Standard of Review ........................................................................................................ 4

    II.    Beasley Is Not Entitled to Summary Judgment as to Liability for Copyright
         Infringement .................................................................................................................. 4

         A.    The Permission for Wiley's Use of Beasley's Photos at Issue Here Is
              Defined by the Parties' Multiple Communications .............................................. 5

         B.    Genuine Issues of Material Fact Remain as to Whether Wiley Is Liable
              for Publishing the Second Edition of *Frommer's Chicago Day by Day* ............ 7

         C.    Genuine Issues of Material Fact Remain as to the Quantity and Scope of
              Wiley's Alleged Overruns .................................................................................. 9

         D.    Genuine Issues of Material Fact Remain as to Wiley's Statute of
              Limitations Defense ......................................................................................... 11

CONCLUSION.......................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.R. Mosler & Co. v. Lurie*,
   209 F. 364 (2d Cir. 1913) ....................................................................14

*Aguila Records Inc. v. Nueva Genercion Music Group, Inc.*,
   2009 WL 3719422 (N.D. Ill. Nov. 4, 2009) .........................................5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................4

*Ben. Standard Life Ins. Co. v. Madariaga*,
   851 F.2d 271 (9th Cir. 1988) ...............................................................13

*Bergt v. McDougal Littell*,
   2006 WL 3782919 (N.D. Ill. Dec. 21, 2006) .........................................6

*Bergt v. McDougal Littell*,
   661 F. Supp. 2d 916 (N.D. Ill. 2009) ............................................6, 8, 9

*Countryman v. Indus. Comm'n*,
   686 N.E.2d 61 (Ill. App. Ct. 1997) .....................................................8, 9

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*,
   2012 WL 1830129 (W.D. Mich. Apr. 23, 2012) ...................................12

*Forbes v. Eagleson*,
   228 F.3d 471 (3d Cir. 2000)..................................................................14

*Frerck v. Houghton Mifflin Harcourt Publ'g Co.*,
   No. 1:2010-cv-06807 (N.D. Ill, filed Oct. 22, 2010) ...........................13

*Frerck v. Houghton Mifflin Harcourt Publ'g Co.*,
   No. 2:10-cv-03555-CDJ (E.D. Pa., filed July 20, 2010)........................13

*Frerck v. John Wiley & Sons, Inc.*,
   No. 1:2011-cv-02727 (N.D. Ill., filed Apr. 25, 2011)............................13

*Frerck v. McGraw-Hill Global Educ. Hldgs., LLC*,
   No. 1:2012-cv-07516 (N.D. Ill, filed Sept. 19, 2012)...........................13

*Frerck v. Pearson Educ., Inc.*,
   No. 1:2011-cv-05319 (N.D. Ill, filed Aug. 5, 2011).............................13

*Glovaroma, Inc. v. Maljack Prods., Inc.*,
   71 F. Supp. 2d 846 (N.D. Ill. 1999) ............................................................9

*I.A.E., Inc. v. Shaver*,
   74 F.3d 768 (7th Cir. 1996) ....................................................................5

*Johnson v. Cypress Hill*,
   619 F. Supp. 2d 537 (N.D. Ill. 2008) ......................................................12

*Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*,
   79 F. Supp. 2d 474 (D.N.J. 1999), *aff'd*, 276 F.3d 577 (3d Cir. 2001)....................14

*Kwan v. Schlein*,
   441 F. Supp. 2d 491 (S.D.N.Y. 2006) ......................................................11

*Leventhal v. Schenberg*,
   917 F. Supp. 2d 837 (N.D. Ill. 2013) ......................................................11

*Leviton Mfg. Co. v. Fireman's Fund Ins. Co.*,
   226 F. App'x 671 (9th Cir. 2007) ....................................................10, 11

*MAI Sys. Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993); ....................................................................5

*McKillip Indus., Inc. v. Integrated Label Corp.*,
   477 F. Supp. 2d 928 (N.D. Ill. 2006) ........................................................4

*Nitrin, Inc. v. Bethlehem Steel Corp.*,
   342 N.E.2d 79 (Ill. App. Ct. 1976) ............................................................9

*NLFC, Inc. v. Devcom Mid-America, Inc.*,
   45 F.3d 231 (7th Cir. 1995) ....................................................................5

*O'Brien v. Kawazoye*,
   327 N.E.2d 236 (Ill. App. Ct. 1975) ........................................................6

*Ortiz v. Guitian Bros. Music Inc.*,
   2008 WL 4449314 (S.D.N.Y. Sept. 29, 2008)............................................12

*Pacini v. Regopoulos*,
   665 N.E.2d 493 (Ill. App. Ct. 1996) ......................................................11

*Psihoyos v. John Wiley & Sons, Inc.*,
   2013 WL 1285153 (S.D.N.Y. Mar. 29, 2013) ............................................1

*Rafferty-Plunkett v. Plunkett*,
   910 N.E.2d 670 (Ill. App. Ct. 2009) ........................................................6

*Ringgold v. Black Entm't Television, Inc.*,
   126 F.3d 70 (2d 1997)......................................................................................10, 11

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) .......................................................................................5

*Sims v. Viacom, Inc.*,
   2012 WL 280609 (W.D. Pa. Jan. 31, 2012)..............................................................12

*Walthal v. Rusk*,
   172 F.3d 481 (7th Cir. 1999) .........................................................................................6

*Wanlass v. Gen. Elec. Co.*,
   148 F.3d 1334 (Fed. Cir. 1998)...................................................................................14

*Williams v. Curington*,
   662 F. Supp. 2d 33 (D.D.C. 2009) ..............................................................................12

## Statutes

17 U.S.C. § 507(b) .............................................................................................................11

## Other Authorities

Fed. R. Civ. P. 56(a) ...........................................................................................................4

Defendant John Wiley & Sons, Inc. ("Wiley") respectfully submits this Memorandum of Law in Opposition to Plaintiff Michael Beasley's Motion for Partial Summary Judgment as to Wiley's purported liability for copyright infringement.

## PRELIMINARY STATEMENT

This case involves the use of a small set of stock photos that appeared in one title of a travel guide that Wiley no longer prints or distributes. Plaintiff Michael Beasley ("Beasley") has moved for partial summary judgment, solely as to liability, without regard to damages, and solely as to the plaintiff's copyright infringement claims, without reference to the plaintiff's other claims for fraud or violation of the Digital Millennium Copyright Act. Discovery in this matter has not borne out the "pattern" of "pervasive" infringement that Beasley has claimed,[1] nor has it revealed an undisputed basis for holding Wiley liable for copyright infringement. Indeed, the contentions concerning willful infringement are beside the point because **none** of the

---

[1] Beasley improperly cites other cases involving entirely distinct circumstances and alleged conduct by Wiley for the immaterial proposition that Wiley is a willful infringer. But such references are not just superfluous, they are *ad hominem* given that Beasley's motion does not even remotely cite a shred of relevant evidence of "willful" conduct by Wiley. *See* Pl.'s Mot. at 8-10. This is because there is **none**. Nor do such immaterial references save Beasley from his failure on this motion to show an absence of a genuine material issue of fact on Wiley's liability as to the claims allegedly at issue in **this** litigation.

More importantly, Beasley selectively quotes from the *Psihoyos* case, curiously leaving out that in a subsequent ruling, District Judge Oetken expressly held **contrary** to Plaintiff's selective and implicitly overruled citation:

> [T]his was essentially a recklessness case rather than an intentional infringement case. . . . There was extensive evidence at trial about Defendant's lack of effective internal procedures for ensuring that permissions were obtained for particular uses of copyrighted photographs (procedures that have since been improved). . . . This was not a case involving brazen, intentional copying of an unrelated third party's copyrighted works. Rather, it arose in the context of a complex three-party framework in which Plaintiff and his agent had generally authorized the use of his works (as stock photographs), subject to a certain payment structure—but where Defendant had failed to obtain permission (and therefore a license) for particular uses.

*Psihoyos v. John Wiley & Sons, Inc.*, 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29), *reconsideration denied by* 2013 WL 441475 (S.D.N.Y. Aug. 20, 2013).

photos at issue in this case are eligible for statutory damages, and hence, none are eligible for any enhanced statutory damages based on a finding of willful infringement. Rather, this case is one exclusively involving claims for actual damages, where the plaintiff's photo agency invoiced his photos for $200 apiece.[2]

Rather, Beasley's motion actually discloses that Wiley largely complied with its original usage estimates in connection with the book at issue here, *Frommer's Chicago Day by Day*, but that material fact questions remain with regard to aspects of the plaintiff's infringement claims, as a result of genuine issues concerning to how and how much Wiley was authorized to use Beasley's photos. Additionally, material fact questions remain as to whether and to what extent Wiley's *de minimis* deviations from its original usage estimates constitute infringement in the first instance. Finally, material fact issues also persist as to whether Beasley's claims could have been brought earlier, and hence whether his claims are barred by the statute of limitations.

Because fact issues preclude any judgment as a matter of law with regard to Beasley's copyright claims, his motion for partial summary judgment.

## SUMMARY OF FACTUAL BACKGROUND

In mid-to-late 2005, Wiley contacted a Chicago stock photo agency, Odyssey Productions, Inc. ("Odyssey"), seeking stock (ordinary, fungible) photos for inclusion in a new travel guide, *Chicago Day by Day*, in Wiley's then-owned Frommer's series. Resp. to Beasley's SUMF ¶¶ 8-11, 15-19.[3] After discussions, in mid-December 2005, Wiley selected photos from Odyssey, including a preliminary list of 31 photos shot by Beasley. *Id.* ¶¶ 15-19.

---

[2] Thus, to the extent Wiley is eventually found liable, any actual damages will be negligible.

[3] Wiley's complete recitation of its response to Beasley's Separate Statement of Facts is more fully contained in the contemporaneously-filed LR 56.1(b)(3) statement ("Resp. to Beasley's SUMF").

In an email exchange, Wiley sent an invoice request to Odyssey with a spreadsheet detailing its photo selections and its estimated print run across the expected two editions of the book and its projected geographic distribution. *Id.* ¶¶ 17-18. In particular, Wiley specifically referenced a detailed spreadsheet which stated that each of the photos would be used in "2 Editions Total." *Id.* ¶ 17.

In response, Odyssey issued a single invoice for payment, which did not mirror Wiley's request perfectly. *Id.* ¶¶ 10, 19. Though the invoice did indicate the print run quantity of 46,000 copies that Wiley had estimated, it failed to note affirmatively that Wiley was anticipating it would publish two editions of the title. *Id.* ¶¶ 10, 11, 19. The invoice also indicated no electronic rights were being billed, though Wiley did not expressly negate or otherwise indicate that no electronic versions ("e-books") of *Frommer's Chicago Day by Day* were to be produced. *Id.* ¶¶ 10, 11, 19.

Years later, after Wiley had published the two separate editions of the travel guide it had planned, one in May 2006 and the second in May 2009, Beasley brought this litigation. *Id.* ¶¶ 20-23, 27. Only then did Wiley learn that it had distributed a modest number of additional copies of *Frommer's Chicago Day by Day* beyond what it had originally estimated, *i.e.*, approximately 55,000 copies, rather than its initial 46,000-copy estimate. *Id.* ¶ 14. Wiley sold a paltry 58 e-books, as to both editions, in total. *Id.* Beasley bases nearly all of his claims on this *de minimus* usage.

## ARGUMENT

Despite the straight-forward posture of this case, involving twenty-nine (29)[4] photos by

---

[4] The second edition incorporated 27 of the 29 Beasley photos that had appeared in the first edition. Resp. to Beasley SUMF ¶ 22.

Beasley in just one Wiley book, *Frommer's Chicago Day by Day*, Beasley has attempted to

manufacture 83 separate "claims" of liability, all apparently so as to improperly multiply the

"value" of the case. *See* Pl.'s Mot. at 1 & Kerr Decl. Ex. 1 (Doc. Nos. 43 & 43-6). Nevertheless,

plaintiff's motion boils down to just one book, published in two editions, in 2006 and 2009.

Even as to that basic scope, there are genuine issues of material fact that prevent summary

judgment on the question of copyright infringement liability.

## I.     Standard of Review

Summary judgment is appropriate only where there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Further, the court does not weigh

evidence or determine the credibility of any properly considered testimony; rather, disputed facts

must be left for resolution at trial. *Anderson*, 477 U .S. at 255; *McKillip Indus., Inc. v. Integrated

Label Corp.*, 477 F. Supp. 2d 928, 929 (N.D. Ill. 2006). In resolving Beasley's motion, the court

must construe all facts in a light most favorable to Wiley, and draw all reasonable inferences in

Wiley's favor. *McKillip Indus.*, 477 F. Supp. 2d at 929 (citing *Anderson*, 477 U.S. at 255).

## II.    Beasley Is Not Entitled to Summary Judgment as to Liability for Copyright Infringement

As a preliminary matter, there is no question that Wiley had authorization to use

Beasley's photos in *Frommer's Chicago Day by Day*, it did. *See* Pl.'s Mot. at 6-7; Resp. to

Beasley SUMF ¶¶ 9-11, 15-19. Rather, the material question is whether and to what extent

Wiley's particular uses of those photos exceeded any limitations on Wiley's use that arose as a

result of the parties' agreement authorizing Wiley's use. It is that question which remains

unsettled.

To prevail on his claim for copyright infringement, Beasley must prove (a) ownership of a copyright in each photo, and (b) copying of each photo *"beyond the scope of a license."* *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 235 n.5 (7th Cir. 1995) (emphasis added) (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993)); *see also I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 n.8 (7th Cir. 1996) (licensee infringes copyright only if its use "exceeds the scope of its license" (citation omitted)). Although Wiley does not contest the validity and Beasley's ownership of copyright rights in the 29 photos at issue, material disputes of fact remain as to the scope of Wiley's permission to use the photos. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087–88 (9th Cir. 1989) ("The critical question is not the existence but the scope of the license.").

### A.    The Permission for Wiley's Use of Beasley's Photos at Issue Here Is Defined by the Parties' Multiple Communications

Contrary to Beasley's dogged assertions that the invoice issued by Odyssey is conclusive and controlling with regard to the scope of the parties' agreement for use of Beasley's photos, there is simply no single document signed by both Odyssey (as Beasley's stock photo agency) and Wiley that governs the scope of Wiley's authorized use of the photos. Resp. to Beasley SUMF ¶ 9-11, 15-19. Rather, where, as here, the parties operated as though they had reached an agreement but no single signed document expresses or constitutes that contract, then a "license" or "complete contract" may be construed from the "letters [and] writings . . . between the parties relating to the subject-matter and so connected with each other that they may be fairly said to constitute one paper relating to the contract."[5] *W. Metals Co. v. Hartman Ingot Metal Co.*, 135

---

[5] Although Beasley does not cite or refer to Illinois law, there does not appear to be any dispute that Illinois law applies to the interpretation of the terms of the license Wiley obtained from Odyssey for its use of Beasley's photos. *See* Resp. to Beasley SUMF ¶ 5; *see, e.g.*, *Aguila Records Inc. v. Nueva Genercion Music Grp., Inc.*, 2009 WL 3719422, at *4 (N.D. Ill. Nov. 4, 2009) (applying Illinois law to

N.E. 744, 745 (Ill. 1922); *O'Brien v. Kawazoye*, 327 N.E.2d 236, 240-41 (Ill. App. Ct. 1975) ("[A] contract need not be contained in a single writing; it may be collected from several different writings which do not conflict with each other and which, when connected, show the parties, subject matter, terms, and consideration."); *see Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 922-24 (N.D. Ill. 2009) (discerning terms of photo license based on parties' multiple communications in similarly-situated copyright infringement action by a photographer against a textbook publisher). The non-conflicting terms of such multiple writings would then constitute the parties' complete agreement as to Wiley's authorization to use Beasley's photos. *Rafferty-Plunkett v. Plunkett*, 910 N.E.2d 670, 676 (Ill. App. Ct. 2009).

Here, those writings, in the form of email communications from Wiley to Odyssey and an invoice issued thereafter, leave substantial ambiguity with regard to whether Wiley was authorized to publish a second edition of *Frommer's Chicago Day by Day*. Wiley's two December 19, 2005 emails from its photo editor to Odyssey's office manager constitute the crux of the parties' discussion of the terms of Odyssey's permission to Wiley for use of Beasley's photos. Resp. to Beasley SUMF ¶¶ 11, 17, 18. Those emails concern Wiley's request for an invoice to bill it for the costs of using Beasley's photos based on Wiley's estimates at that time of the extent of its anticipated use. *Id.* ¶¶ 17, 18. In one of those emails, a thorough spreadsheet was attached specifically detailing Wiley's intended uses of Beasley's photos, and Wiley clearly requested a "print run" of "46,000 (*2 Editions Total*)." *Id.* ¶ 17 (emphasis added). In this spreadsheet, Wiley made clear that it intended to use Beasley's photos across two editions, and

---

contract interpretation in copyright and trademark infringement dispute); *Bergt v. McDougal Littell*, 2006 WL 3782919, at *2 & n.1 (N.D. Ill. Dec. 21, 2006) (holding law of the situs of the court applies where neither party raises a conflict of law issue); *see also Walthal v. Rusk*, 172 F.3d 481, 485 (7th Cir. 1999) ("state contract laws pertain to the transfer of interests under the Copyright Act").

that it anticipated its distribution of those two editions would run up to 46,000 copies. *Id.* ¶¶ 17, 18.

In response to Wiley's emails, Odyssey then issued Invoice No. 765174. *Id.* ¶ 19. The language in the "Usage Rights Granted" provision of Odyssey's invoice stated that the title of Wiley's intended publication was "Frommer's 'Chicago Day by Day' 1st Edition." *Id.* However, there was no indication anywhere on the face of this invoice that Wiley's use of Beasley's photos was limited to just the first edition of *Frommer's Chicago Day by Day*. *Id.* Indeed, the face of the invoice itself indicated that Wiley was authorized to continue to print copies of Beasley's photos for up to six years, rather than the three-year life cycle of Wiley's travel books, necessarily implying that Odyssey's invoice encompassed a price for publication of Beasley's photos during the six-year life cycle of both the first and second editions of the book. *Id.* ¶ 17-19.

Neither Wiley's invoice request emails, nor Odyssey's invoice itself, was signed by the receiving party, but Wiley paid the invoiced amount and proceeded to publish *Frommer's Chicago Day by Day*. *Id.*

> **B.** **Genuine Issues of Material Fact Remain as to Whether Wiley Is Liable for Publishing the Second Edition of *Frommer's Chicago Day by Day***

To discern the terms of the parties' agreement, Wiley's ***invoice request*** cannot simply be ignored. *See* Pl.'s Mot. at 6-7; *cf.* Resp. to Beasley SUMF ¶¶ 9-11, 15-19. Because Wiley did in fact explicitly indicate its intention to use Beasley's photos in "2 Editions Total," the record in this case does not permit the Court to hold as a matter of law that Wiley's publication of Beasley's photos in the second edition was necessarily unauthorized. Rather, a jury must determine what exactly the parties intended and agreed with regard to the scope of Odyssey's

permission to Wiley for use of Beasley's photos. *See* Resp. to Beasley SUMF ¶¶ 10, 17-19; *cf.* Kerr Decl. Ex. 1 at rows 1-27 (Doc. No. 43-6).

This Court previously has addressed analogous circumstances wherein it recognized that the scope of a photo license between a stock photo agency and a publisher is informed by the terms in ***both the invoice request letter and the invoice itself***, holding that in such circumstances, neither document is controlling where the terms are in apparent conflict. *See Bergt*, 661 F. Supp. 2d at 922-24. In *Bergt*, the defendant publisher's invoice request had indicated an estimated print run but the resulting invoice from the stock agency, which the publisher had paid, failed to set any express print run limit. *Id.* at 923. When plaintiff attempted to use the invoice request's reference to an estimated print run to limit the scope of the defendant's permitted use, the Court held that fact issues remained as to the parties' intent concerning a print limit and that summary judgment was not appropriate because plaintiff had therefore "failed to establish conclusively that the license he granted [defendant] . . . was limited in scope." *Id.* at 924. So too here.

As in *Bergt*, Beasley's invoice is, at the least, ambiguous with respect to whether a second edition of *Frommer's Chicago Day by Day* incorporating his photos was "authorized." Unlike, for example, the invoice's statement that "No electronic rights" were being granted, *see* Resp. to Beasley SUMF ¶ 19, there is no such express statement on the face of the invoice with respect to a second edition. *See Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. App. Ct. 1997) ("Where the contract is ambiguous, its interpretation is generally a question of fact subject to rules of contract construction and parol evidence."). Nor is there any evidence that Wiley ***ever*** stated to Odyssey that it intended to make only one edition and was seeking an invoice consistent with such a term. Resp. to Beasley SUMF ¶¶ 17-19. Rather, the evidence is that Wiley ***did***

request an invoice for its use of the photos in **two editions**. *Id.* ¶ 17. Moreover, the record demonstrates that Odyssey's office manager received the spreadsheet and simply overlooked Wiley's express request – noting he was at fault for his failure to observe the Wiley's specific reference to the spreadsheet. Resp. to Beasley SUMF ¶ 11 ("But I never saw this until later, and then I realized it was partially my fault because I had not observed this note . . . .").

Indeed, when these facts are considered in light of Wiley's express request for "2 Editions Total," either Wiley was authorized to make a second edition incorporating Beasley's photos or, at the least, "doubt remains" as to whether the parties' agreement permitted Wiley to make the second edition, and "the question of [that] interpretation must be left to the trier of fact." *Countryman*, 686 N.E.2d at 64 (citation omitted); *Bergt*, 661 F. Supp. 2d at 924 (same); *see also Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F. Supp. 2d 846, 856 (N.D. Ill. 1999) (denying summary judgment where fact questions remained concerning the scope of defendant's license and the extent of the infringement in light of that license); *Nitrin, Inc. v. Bethlehem Steel Corp.*, 342 N.E.2d 79, 87-88 (Ill. App. Ct. 1976) (holding that, where purchase order and invoice differed on a particular term, and "where the case turns upon the proper conclusions to be drawn from a series of letters, particularly of a commercial character, taken in connection with other facts and circumstances, it is one which is properly referred to a jury" and therefore summary judgment is not appropriate).

### C. Genuine Issues of Material Fact Remain as to the Quantity and Scope of Wiley's Alleged Overruns

Beasley further claims that Wiley infringed the copyright in his photos by printing a total of 75,938 copies of *Chicago Day by Day*, *see* Pl.'s Mot. at 7 & Kerr Decl. Ex. 1 at rows 1-27 (Doc. No. 43-6), and cites Exhibits 1-4 to the Kerr Declaration as supporting that allegation, *see* Kerr Decl. ¶¶ 4-5 & sealed exhibits thereto (materials bearing Bates-labels WBEASLEY

000960, WBEASLEY 000961, and WBEASLEY 000966). He also makes much ado about Wiley's "unauthorized" electronic versions ("e-books") of both editions. Pl.'s Mot. at 8-9.

A review of WBEASLEY 000961, however, reflects that Wiley *distributed* far fewer copies than alleged by Beasley. To the contrary, Wiley distributed just over 55,000 copies—an amount much less than the printed quantity referenced in Beasley's Motion and an amount minimally in excess of the 46,000 licensed through Odyssey. Whatever the difference between the number of copies of *Frommer's Chicago Day by Day* that Wiley printed and those it actually distributed, the only germane quantity is the latter. Beasley does not, and cannot, point to any harm he suffered as a result of printed copies that were never put into commerce nor were responsible for any commercial benefit to Wiley. Such instances are *de minimis* and not sufficiently substantial to warrant a finding of liability. *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997) (holding *de minimis* doctrine essentially provides that where unauthorized copying is sufficiently trivial, "the law will not impose legal consequences"); *see also Leviton Mfg. Co. v. Fireman's Fund Ins. Co.*, 226 F. App'x 671, 673 (9th Cir. 2007) (court must consider "the scope and performance" under a contract and minor breaches with no evidence of actual damages by plaintiff are insufficient for a finding of liability).

Likewise, Beasley makes much of Wiley's creation of e-book versions of both the first and second edition of *Frommer's Chicago Day by Day*, but a closer examination reveals that – though such versions were indeed not "authorized" by the invoice – Wiley produced and sold but a trifling amount. During the course of more than six years, Wiley sold just 42 e-book copies of the first edition, and a mere 16 e-book copies of the second edition. *See* Resp. to Beasley SUMF ¶ 14; Kerr Decl. Ex. 1 at rows 28-83 (Doc. No. 43-6). Indeed, fully three-fourths of Beasley's duplicative claims in his summary judgment motion here relate to the *de minimis* total of 58 e-

10

book copies. *See Pacini v. Regopoulos*, 665 N.E.2d 493, 497-98 (Ill. App. Ct. 1996) (finding minor breach of contractual obligation was such a small amount that under the *de minimis non curat lex* doctrine no breach had occurred); *see also Ringgold*, 126 F.3d at 74; *Leviton Mfg. Co.*, 226 F. App'x at 673. As a matter of law, such inconsequential deviations by Wiley from the permissioned terms for *Frommer's Chicago Day by Day* cannot result in a finding of liability.[6]

### D. Genuine Issues of Material Fact Remain as to Wiley's Statute of Limitations Defense

Summary judgment is also inappropriate because fact issues remain as to whether Beasley was or should have been aware of his copyright infringement claims when Wiley made its worldwide publication of the allegedly infringing e-book versions (and second edition) of *Frommer's Chicago Day by Day* – all of which occurred well before the limitations period of three years prior to October 31, 2012. Resp. to Beasley SUMF ¶¶ 20-27; Compl. (Doc. No. 1).[7]

Under 17 U.S.C. § 507(b), "[n]o civil action shall be maintained under [Title 17 of the U.S. Code] unless it is commenced within three years after the claim accrued." *See Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 845-46 (N.D. Ill. 2013) ("the statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries"). As to the date of accrual, when applying the statute of limitation to claims arising from an allegedly unauthorized publication of a work, the cause of action is deemed to accrue upon that publication. *See, e.g.*, *Kwan v. Schlein*, 441 F. Supp. 2d 491, 499 (S.D.N.Y. 2006) ("Even applying the more liberal discovery rule," a plaintiff "knew or should have known . . . when the book was published-or shortly thereafter.");

---

[6] Likewise, the Court cannot grant Beasley's request for summary judgment on Wiley's affirmative defense of license, *see* Pl.'s Mot. at 13, because, as discussed above, the scope of the "license" and thus Wiley's authorized and unauthorized use of Beasley's photos remains a material fact issue.

[7] For the same reasons discussed here, Beasley's request for summary judgment on Wiley's statute of limitations affirmative defense must be denied. *See* Pl.'s Mot. at 12-13.

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830129, at *2 (W.D. Mich. Apr. 23) ("[I]f the infringement is open and notorious, the copyright holder should be expected to discover it within a three year period."), *adopted by* 2012 WL 1830103 (W.D. Mich. May 18, 2012).

Thus, where, as here, Beasley's copyright infringement claims rest in large part on the e-book versions of *Frommer's Chicago Day by Day*, his cause of action accrued upon the date of that unauthorized publication. *Ortiz v. Guitian Bros. Music Inc.*, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008) (finding "public distribution of the work at issue . . . creat[ed] sufficient notice to begin the running of the statute of limitations" and holding that limitations period began "when the DVD was officially released and publicly distributed"); *Sims v. Viacom, Inc.*, 2012 WL 280609, at *5 (W.D. Pa. Jan. 31, 2012) (public airing of allegedly infringing show triggered the running of the limitations period); *see also Williams v. Curington*, 662 F. Supp. 2d 33, 38 (D.D.C. 2009) ("[T]he release date of each allegedly infringing song is an appropriate date on which to begin running the statute of limitations.").

A reasonable photographer and stock agency in both Beasley's and Odyssey's position could have discovered the publication of *Frommer's Chicago Day by Day* as an electronic e-book soon after the release of the first edition in 2007, and second edition in May 2009. Resp. to Beasley SUMF ¶¶ 20-27; *see e.g.*, *Ortiz*, 2008 WL 4449314, at *3. Indeed, as Wiley argued in its own motion for summary judgment, Beasley has provided no justification or support for his delay. *See* Wiley's Mem. in Support of Partial Summ. J. at 15 (Doc. No. 45).

Further, fact issues remain as to whether Beasley's delay in discovering the open and public release of the e-book versions and the second edition of *Chicago Day by Day* was reasonable. *Johnson v. Cypress Hill*, 619 F. Supp. 2d 537, 543-44 (N.D. Ill. 2008) (denying

summary judgment to plaintiff because question of whether a "reasonable" person in plaintiff's position would have discovered the copyright infringement is a fact question); *see also Ben. Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988) (noting that ordinarily "the question of whether a plaintiff knew or should have become aware of " of a claim under the discovery rule is a fact issue for the jury).

Here, the record indicates that Beasley may have been – or, at least, could have been – aware that Wiley not only intended to, but did publish the second edition of *Frommer's Chicago Day by Day* in early 2009. *See* Resp. to Beasley SUMF ¶¶ 22-25. The undisputed evidence is that Wiley published the second edition of *Frommer's Chicago Day by Day* in May 2009. *Id.* ¶¶ 22, 23. According to Beasley, he spoke with Robert Frerck, the principal and owner of Odyssey, and learned that during the course of Frerck's own efforts to root out possible infringements, Frerck discovered a "prepublication notice" on the internet indicating that a second edition of the Chicago Day by Day book was ***going to be published***; thus, Beasley was necessarily aware of a notice that must have been generated and publicly available for all the world to see ***before*** May 2009. *Id.* ¶¶ 24, 25.[8] Though Beasley could not recall when this particular conversation took place, *see id.* ¶ 25, it further illustrates the relative ease with which Beasley could have discovered the worldwide publication of both the e-books and the second edition of *Frommer's Chicago Day by Day* and thus, the basis for his claims here.

Moreover, Frerck and Beasley have been on constructive notice that the images at issue

---

[8] It is clear that Mr. Frerck is no stranger to filing similarly-situated infringement suits against the publishing industry for alleged overruns; indeed he has been suing Wiley and other publishers since 2010. *See Frerck v. Houghton Mifflin Harcourt Publ'g Co.*, No. 2:10-cv-03555-CDJ (E.D. Pa., filed July 20, 2010); *see also Frerck v. McGraw-Hill Global Educ. Hldgs., LLC*, No. 1:2012-cv-07516 (N.D. Ill, filed Sept. 19, 2012); *Frerck v. Pearson Educ., Inc.*, No. 1:2011-cv-05319 (N.D. Ill, filed Aug. 5, 2011); *Frerck v. John Wiley & Sons, Inc.*, No. 1:2011-cv-02727 (N.D. Ill., filed Apr. 25, 2011); *Frerck v. Houghton Mifflin Harcourt Publ'g Co.*, No. 1:2010-cv-06807 (N.D. Ill, filed Oct. 22, 2010).

here may have been infringed, as national media such as *The Wall Street Journal*, respected industry professionals, as well as their own attorneys, have been reporting changes in the stock photography business models and potential violations by textbook publishers for years, especially since 2005. Resp. to Beasley SUMF ¶ 27 (collecting articles). Indeed, Beasley's own counsel have cautioned photographers to monitor the use of their images. *Id.* ¶ 27(g. Beasley's failure to investigate years before the complaint here is particularly inexcusable where the steps required to discover the alleged infringement are – as Beasley himself admitted – minimal. Resp. to Beasley SUMF ¶¶ 24-26; *see Kepner-Tregoe, Inc. v. Exec. Dev., Inc.*, 79 F. Supp. 2d 474, 488 (D.N.J. 1999) ("[A] reasonable [copyright holder], motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor."(alteration in original; citation omitted)), *aff'd*, 276 F.3d 577 (3d Cir. 2001) (Table); *see also id.* (citing *A.R. Mosler & Co. v. Lurie*, 209 F. 364, 371 (2d Cir. 1913) for the proposition that infringement suits are barred "where complainants lay 'supine for many years, shutting their eyes to what was going on [within their field]'" (alteration in original)); *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998) ("[C]onstructive knowledge of the infringement may be imputed to the patentee even where he has no actual knowledge of the sales, marketing, publication, public use, or other conspicuous activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor. The patentee who is negligently or willfully oblivious to these types of activities cannot later claim his lack of knowledge." (citing cases)).

On the basis of this evidence, a jury could well decide that Beasley's delay in bringing this suit – tantamount to sticking his head in the sand – was unreasonable and his claims untimely. *See Forbes v. Eagleson*, 228 F.3d 471, 488 (3d Cir. 2000) (affirming claims as

untimely where "plaintiffs 'could have actually pled almost every allegation in their complaint concerning defendants alleged [violations]'" years earlier (quotation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should find that the record establishes no liability for copyright infringement with regard to the printed copies of the first edition of *Frommer's Chicago Day by Day* because Wiley's printing and distribution of that edition was well within the 46,000-copy price that Wiley had paid. Furthermore, genuine issues of material fact remain as to Beasley's claims of copyright infringement with regard to the second edition of the book and the e-book publications. As a result, the Court should deny Beasley's cross-motion for partial summary judgment as to copyright infringement liability.[9]

---

[9] The Court should further deny Beasley's request for judgment on Wiley's affirmative defense concerning Beasley's failure to mitigate his damages, *see* Pl.'s Mot. at 13-14, as neither Wiley's nor Beasley's cross-motions are aimed at any aspect of a damages' calculation. Thus, whether Beasley was required to mitigate his damages, and to what extent his damages are limited by such a principle is simply not ripe at this juncture. *See Chi. Dist. Council of Carpenters Pension Fund v. Simpson Constr. Co.*, 2006 WL 3754822, at *3 (N.D. Ill. Dec. 18, 2006) ("The precise amount of the alleged deficiency is not at issue because the parties have moved for summary judgment on the issue of liability alone, and the amount of damages is therefore not before the court.").

Dated:  December 23, 2013.

By: ___/s____ _Michael Beylkin_ _____

Christopher P. Beall
Michael Beylkin
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 1000
New York, NY  10036
(T): (212) 850-6100
(F): (212) 850-6299
cbeall@lskslaw.com
mbeylkin@lskslaw.com

William McGrath
Kevin A. Thompson
Davis McGrath LLC
125 South Wacker Drive
Chicago, Illinois 60606
(T): (312) 332-3033
(F): (312) 332-6376
wmcgrath@davismcgrath.com
kthompson@davismcgrath.com

*Attorneys for Defendant John Wiley & Sons, Inc.*

## CERTIFICATE OF SERVICE

I, Michael Beylkin, an attorney and counsel of record for Defendant John Wiley & Sons, Inc., certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF electronic filing system, which will send automated notification of this filing to all parties of record on this date.

Dated:  December 23, 2013

By: ___/s____ _Michael Beylkin_ _____